# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| SPEED RMG PARTNERS, LLC, ROBBY GORDON, AND TODD ROMANO,<br><br>*Plaintiffs*,<br><br>v.<br><br>ARCTIC CAT SALES INC., ARCTIC CAT INC., TEXTRON SPECIALIZED VEHICLES INC., AND TEXTRON INC.,<br><br>*Defendants*. | Case No. 0:20-cv-00609-NEB-LIB |

*DECLARATION OF STEVEN A. NICHOLS IN SUPPORT OF OPPOSITION TO MOTIONS FOR PROTECTIVE ORDERS TO PRECLUDE THE DEPOSITIONS OF SCOTT DONNELLY AND KEVIN HOLLERAN*

## *DECLARATION OF STEVEN A. NICHOLS*

I, Steven A. Nichols, declare the following:

1.      I am a partner at the law firm of Rutan & Tucker, LLP, counsel of record for defendants Speed RMG Partners, LLC ("Speed Partners"), Robby Gordon, and Todd Romano (together with Speed Partners and Mr. Gordon, the "Speed RMG Parties") in this action (the "Action"). I am a member in good standing of the State Bar of California. I make this Declaration in support of Speed RMG Parties' Opposition to Motion For A Protective Order to Preclude the Deposition of Scott Donnelly. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath. I am lead trial counsel for Speed Partners, Robby Gordon and Todd Romano in this Action, and I am familiar with Rutan & Tucker, LLP's case file pertaining to it.

2.      On January 4 through 6, 2021, Dan Haws (counsel for Arctic Cat Parties[1]) and I engaged in telephone conversations regarding deposition scheduling. During those conversations, I raised the topic of deposing Scott Donnelly. Mr. Haws stated that he had not been in contact with Mr. Donnelly and did not have information regarding Mr. Donnelly's involvement in the events underlying this litigation, but still raised an objection to Mr. Donnelly's deposition on the basis that he is a CEO. I responded that I understood that Mr. Donnelly was materially involved in managing important issues pertaining to Arctic Cat Parties' relationship with our clients (as memorialized in my January 6, 2021 email). Mr. Haws stated that he would investigate Mr. Donnelly's involvement in those events and report back. I received no further report from Mr. Haws' office concerning Mr. Donnelly's involvement. Also during those conversations, I informed Mr. Haws of our intention to depose Kevin Holleran and Scott Ernest. Mr. Haws stated that he would not represent or produce those deponents as confirmed in my January 6, 2021 email.

---

[1]    The term "Arctic Cat Parties" collectively refers to defendants Arctic Cat Sales Inc., Arctic Cat Inc., Textron Specialized Vehicles Inc., and Textron Inc. In places, this Opposition also collectively refers to (1) Arctic Cat Sales Inc. and Arctic Cat Inc. as "Arctic Cat" and (2) Textron Specialized Vehicles Inc., and Textron Inc. as "Textron."

3. On January 6, 2021, I emailed Arctic Cat Parties' counsel, following up on the telephone discussion concerning Mr. Donnelly as follows: "As for Donnelly, we are not able to make a final decision on his deposition at this time.  As discussed, we understand that he was involved in managing important issues pertaining to the relationship with our clients.  From our last conversation, I understood that you were going to seek information pertaining to his involvement and let us know whether you still objected to his deposition." A true and correct copy of that email correspondence is attached hereto as **Exhibit 1**.

4. In that same email, I advised Mr. Haws that we were "in the process of making contact with Holleran" and confirmed that Mr. Haws' office did not represent and would not produce Mr. Holleran, a former employee, for deposition.  (*See* Ex. 1.)

5. Arctic Cat Parties' counsel responded, but did not address the part of my email pertaining to Mr. Donnelly's involvement and their final position about his deposition.  Counsel did address the part of my email concerning Mr. Holleran's deposition, stating that he would check with his client.  (*See* Ex. 1.)

6. On January 11, 2021, Arctic Cat Parties' counsel informed me that he would seek a protective order to prevent Mr. Holleran's deposition, stating: "we will be representing him in connection with any deposition.  However, we again view the deposition as not reasonable or necessary as he was a CEO, and any information you would ask of him could have been obtained from others, such as Collins."  (*See* Ex. 1.)

7. On January 12, 2021, I requested that Arctic Cat Parties "cite me to the key case or cases that you rely on for the proposition that these current and former employees are not subject to deposition in our case based on their title or involvement.  Once I have that, I will be in a position to evaluate your position." (*See* Ex. 1.)

8. The following day, Arctic Cat Parties' counsel responded with the conclusory assertion that "you have the ability to get the answer to the question of whose decision it was not to proceed with other XX variants from witnesses you already deposed . . . . Other fact witnesses who are not CEO's of Textron or Former CEO's of TSV, may know this as well," followed by a paragraph of general legal boilerplate.  (*See* Ex. 1.)

Counsel never informed me of the results of his investigation concerning Mr. Donnelly's involvement, as he had indicated he would during our phone conversations.

9. I did not immediately respond, as the depositions for Mr. Holleran and Mr. Donnelly were not on calendar. Arctic Cat Parties did not call me to discuss the issue further, nor did they send a follow-up email. Instead, Arctic Cat Parties filed their motions for protective orders.

10. Attached hereto as **Exhibit 2** is a true and correct copy of an email and its attachment produced in the course of this litigation as Bates Nos. Speed RMG v. Arctic Cat_0046374 and 00463745, which was sent on September 25, 2018, from John Collins to Mr. Holleran attaching a presentation titled "Donnelly Dirt Review Collins," with the body of the email providing: "For tomorrow."

11. Attached hereto as **Exhibit 3** is a true and correct copy of an email and its attachment produced in the course of this litigation as Bates Nos. Speed RMG v. Arctic Cat_0022570 and 0022570, which was sent on April 7, 2019, from Bill Rhinesmith to Mr. Collins attaching a presentation called "Dirt Product Strategy," with the body of the email providing in part: "Scott has indicated that he is not interested in the XTR/XXmarket …"

12. Attached hereto as **Exhibit 4** is a true and correct copy of the initial disclosures that Speed RMG Parties served in this litigation on December 2, 2019, which identified Mr. Holleran as an individual with discoverable information.

Executed on February 4, 2021 at Irvine, California.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Steven A. Nichols