UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| SPEED RMG PARTNERS, LLC; ROBBY GORDON; and TODD ROMANO, | Case No. 20-CV-609 (NEB/LIB) |
| Plaintiffs, | |
| v. | ORDER ON APPEAL OF DENIAL OF MOTION TO AMEND |
| ARCTIC CAT SALES INC.; ARCTIC CAT INC; TEXTRON SPECIALIZED VEHICLES INC.; and TEXTRON INC., | |
| Defendants. | |

Plaintiffs Speed RMG Partners, LLC, Robby Gordon, and Todd Romano (collectively, "Speed Partners") sued Defendants[1] for breach of contract and fraud. After discovery—and the Court's denial of Defendants' motion to dismiss (ECF No. 232 ("MTD Order"))—Speed Partners sought leave to amend its complaint to seek punitive damages. (ECF No. 233.) United States Magistrate Judge Leo I. Brisbois denied the motion. (ECF No. 286 ("Amendment Order").) In denying the motion—and applying Minnesota law that bars punitive damages for breach of contract claims—Judge Brisbois questioned whether the tort claims that Speed Partners alleged were sufficiently distinct from its

---

[1] Arctic Cat Sales Inc. and Arctic Cat Inc. merged with Textron Inc. and Textron Specialized Vehicles Inc. ("TSV"). (ECF No. 164 ¶¶ 8–9, 69.) The Court refers to the pre-merger parties as "Arctic Cat" and "Textron."

breach of contract claim to support punitive damages. (Amendment Order at 4–5.) Concluding that the claims were not sufficiently separate, Judge Brisbois denied the motion and did not reach the substance of the parties' arguments. (*Id.* at 4–9.) Speed Partners has now appealed that decision to this Court. (ECF No. 309.) For the following reasons, the Court reverses the Amendment Order and grants Speed Partners' motion to amend the Complaint to seek punitive damages.

## BACKGROUND

The parties have exhaustively litigated the facts of the case and the Court and Judge Brisbois have both detailed them extensively; the Court incorporates those recitations by reference. (*E.g.*, MTD Order at 2–6; *see* Amendment Order at 1–2 (listing other orders recounting the facts of the case).) Because Speed Partners seeks to amend the Complaint, the Court notes several relevant factual allegations contained in the proposed Third Amended Complaint (ECF No. 237-1 at 117–72 ("PTAC")):

–Arctic Cat was aware of a conflict between Speed Partners' designs and their own designs, including that resources directed to the Zeus project impaired development of Speed Partners' designs; Arctic Cat's management had explicitly directed Arctic Cat's Director of New Product Development not to mention Zeus to Speed Partners. (PTAC ¶ 55.)[2]

---

[2] Judge Brisbois considered only the allegations in Speed Partners' Second Amended Complaint, which did not contain the request for punitive damages. (*E.g.*, ECF No. 164.) For purposes of determining whether to grant a motion to amend, a court should consider

–Speed Partners requested that Arctic Cat acknowledge portions of its designs as novel, but Arctic Cat ignored the request and attempted to deny the novelty of the designs, and then ultimately incorporated the allegedly novel elements without acknowledgment. (*Id.* ¶¶ 58–59.) Only after the United States Patent and Trademark Office issued a patent on one of Speed Partners' designs did Arctic Cat reverse its position and demand that Speed Partners assign the patent rights to it. (*Id.* ¶ 89.)

–At the same time that Arctic Cat assured Speed Partners that it would develop Speed Partners' designs, it internally circulated a document from Speed Partners protesting a project cancellation with the commentary "Get ready to rumble." (*Id.* ¶ 62.)

–While Arctic Cat continued to profess its intent to continue developing Speed Partners' designs, it had already formed plans to "shut the [partnership] down." (*Id.* ¶ 64.)

–Arctic Cat had internal communications about its insolvent financial status and had not publicly disclosed the state of its finances. (*Id.* ¶ 77.)

## ANALYSIS

Ordinarily, the Court reviews a magistrate judge's order on a nondispositive motion with deference, reversing only if the ruling is "clearly erroneous or contrary to

---

the proposed complaint, not the currently-operative complaint. *Cf. Pure Country, Inc. v. Sigma Chi Fraternity*, 312 F.3d 952, 956 (8th Cir. 2002) (holding that the district court erred in denying a motion to amend as moot after dismissing the complaint, requiring consideration of the motion to amend—and the allegations within—first).

3

law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). A motion for leave to amend is exactly the sort of nondispositive motion to which this standard usually applies. In this District, however, some judges have concluded that where a magistrate judge denies a motion to amend because the proposed amendment would be futile, *de novo* review is appropriate. *E.g.*, *Selective Ins. Co. of S.C. v. Sela*, 353 F. Supp. 3d 847, 852 (D. Minn. 2018). Here, that approach makes sense, and the Court reviews the Amendment Order *de novo*.[3]

Based on the *de novo* review, the Court reverses the Amendment Order in part and grants Speed Partners leave to amend the Complaint.

I.  **Separate and Distinct Claims**

The Court begins by addressing Judge Brisbois's conclusion that Speed Partners' tort claims are indistinguishable from its contract claims. Under Minnesota law, a plaintiff may not recover punitive damages for breach of contract unless that breach either amounts to or comes with an independent tort. *Wild v. Rarig*, 234 N.W.2d 775, 789 (Minn. 1975). For example, an injured railroad passenger can seek punitive damages if he is injured as a result of the railroad's negligence—the tort would not exist without the contract (buying the ticket), but the tort "duty is an incident of the relationship rather

---

[3] As Judge Schiltz aptly noted in *Sela*, the Court can invoke a more searching standard of review on an order from a magistrate judge than it might ordinarily apply because the Court is not obligated to refer the motion to the magistrate judge in the first place and could revoke the referral and decide the issue on its own, if it so choses. *Sela*, 353 F. Supp. 3d at 853 n.1. Defendants' assertions to the contrary do not carry the day.

4

than the contract, and the carrier would be liable if the passenger was carried free." *Id.* at 790. If the foundation of the tort claim is the contract and the breach its essence, there can be no punitive damages.[4] *Id.* Even bad faith motives for breach are not sufficient to give rise to a claim for punitive damages. *Lickteig v. Alderson, Ondov, Leonard & Sween, P.A.*, 556 N.W.2d 557, 561 (Minn. 1996).

Thus, where a plaintiff asserts both contract and tort claims for similar or related conduct, the Court must determine whether the defendant had a legal duty to the plaintiff separate and apart from any that the contract imposes. *Toyota-Lift of Minn., Inc. v. Am. Warehouse Sys., LLC*, 868 N.W.2d 689, 696 (Minn. Ct. App. 2015); *Hanks v. Hubbard Broadcasting, Inc.*, 493 N.W.2d 302, 308 (Minn. Ct. App. 1992) ("The issue becomes whether there is a breach of duty which is distinct from the breach of contract."). One such instance is fraud in the inducement of a contract. *Hanks*, 493 N.W.2d at 308; *see McDonald v. Johnson & Johnson*, 776 F.2d 767, 770 (8th Cir. 1985) ("[C]ourts agree that fraud in inducing a contract and a later breach of that contract represent two distinct causes of action under Minnesota law.") (citing, among others, *Woodman v. Blue Grass Land Co.*, 107 N.W. 1052, 1052–53 (Minn. 1906)).

As this Court previously concluded in the MTD Order, Speed Partners has plausibly alleged that Defendants had breached a duty to speak. (MTD Order at 20.) That

---

[4] This rule also applies to claims for breach of the implied covenant of good faith and fair dealing. *Wild*, 234 N.W.2d at 790.

5

duty, the Court found, arose from providing Speed Partners with false or misleading information at various times through their relationship. (*Id.*) Speed Partners alleges that Defendants made some of these statements before the parties signed a contract, making the duty separate from the contract. (*E.g.*, PTAC ¶¶ 26–30); *Sjogren*, 244 N.W.2d at 650. Furthering this conclusion, the contract in this case makes no mention of Arctic Cat's Zeus project that allegedly competed with Speed Partners' designs, so a claim arising from statements related to the Zeus project necessarily arises outside the contract. (MTD Order at 17–21 (primarily addressing the claims related to Zeus).)

Given these conclusions, the Court must also conclude that the PTAC adequately alleges tort claims separate from contract claims.

## II.    Rule 15 Versus Minnesota Statutes Section 549.191

Having resolved one threshold question before proceeding to the merits, the Court considers a second.

There is a split of opinion in this District over the governing procedure for amending a complaint to assert punitive damages in a diversity case. The two options are 1) Rule 15 of the Federal Rules of Civil Procedure, and 2) Minnesota Statutes Section 549.191. *Dolphin Kickboxing Co. v. Franchoice, Inc.*, 335 F.R.D. 393, 397–98 (D. Minn. 2020). The majority of judges in this District have concluded that Rule 15 governs, rather than Section 549.191. *See id.* at 398–99 (citing cases). The undersigned has not yet, but now must, wade into the "murky waters" of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938) to

resolve the question. *Shady Grove Ortho. Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010).

Under *Erie*, federal courts, when sitting in diversity, apply federal procedural law and state substantive law. *Gasperini v. Ctr. For Humanities, Inc.*, 518 U.S. 415, 427 (1996). Because courts generally view pleading standards as procedural (i.e., how a plaintiff must *plead* a claim vis-à-vis what he must show to *prove* it), federal courts apply those federal standards, regardless of whether the claim is under federal or state law. *Karnatcheva v. JPMorgan Chase Bank, N.A.*, 704 F.3d 545, 548 (8th Cir. 2013) ("We apply federal pleading standards . . . to the state substantive law to determine if a complaint makes out a claim under state law.").

In determining whether to apply Rule 15 or Section 549.191, the Court applies a two-step inquiry: first, it must ask whether Rule 15 "answers the question in dispute"; second, it must ask whether Rule 15 is statutorily authorized and within Congress's rulemaking power. *Shady Grove*, 559 U.S. at 398; *Sela*, 353 F. Supp. 3d at 856.

### A. Federal and State Pleading Standards

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only that a plaintiff provide the Court with "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 15(a)(2) provides that, apart from an exception not relevant here, "a party may amend its pleading only with the opposing

party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

Section 549.191, on the other hand, bars a plaintiff from seeking punitive damages in the initial complaint. Minn. Stat. § 549.191. The plaintiff seeking leave to amend the complaint "must allege the applicable legal basis . . . for awarding punitive damages[,] . . . [and the motion to amend] must be accompanied by one or more affidavits showing the factual basis for the claim." *Id.* The court hearing the motion to amend shall grant the motion if it finds "prima facie evidence in support of the motion." *Id.*

### B. *Section 549.191 Conflicts with the Federal Rules*

As noted above and as *Shady Grove* directs, the Court first considers whether Rule 15 "answers the question in dispute." 559 U.S. at 398. In *Shady Grove*, the Supreme Court considered the potential conflict between Rule 23 of the Federal Rules of Civil Procedure and a New York law that precluded suits seeking to recover a "penalty" from proceeding as class actions. *Id.* at 397–99. Concluding that "Rule 23 provides a one-size-fits-all formula for deciding the class action question," the Supreme Court held that New York's law (which barred Shady Grove's suit as a class action) conflicted with Rule 23 (which permitted it). *Id.* at 399.

Like Rule 23, Rule 15 provides a "one-size-fits-all formula" for amendments (whether to seek punitive damages or otherwise): the Court should grant leave "when justice so requires," based on the Rule 8(a)(2) requirement of a "short and plain

statement." Fed. R. Civ. P. 8(a)(2) & 15(a)(2). Rule 15 does not set forth an evidentiary requirement or require affidavits to show the basis of the claim. *Dolphin Kickboxing*, 335 F.R.D. at 398. But Section 549.191 does set forth an evidentiary requirement and does require affidavits. Minn. Stat. § 549.191. The question in dispute is whether Speed Partners may amend its complaint. Rule 15 says that Speed Partners may if justice so requires. Section 549.191 provides that Speed Partners may do so only if it has produced affidavits showing the basis for the claim and the Court has found prima facie evidence supporting those allegations. These are both attempts to "answer[] the question in dispute," (whether and when Speed Partners may amend) and therefore conflict. Section 549.191 thus applies only if Rule 15 is invalid.[5] *Shady Grove*, 559 U.S. at 398.

The Court is not persuaded by contrary authority in this district. In *Inline Packaging, LLC v. Graphic Packaging International, LLC,* Judge Brisbois concluded that Rule 15 and Section 549.191 do not conflict, and because Rule 15 grants the district court discretion; with that discretion comes the ability to consider Section 549.191's requirements. No. 15-CV-3183 (ADM/LIB), 2018 WL 9919941, at *5 (D. Minn. Mar. 8, 2018) ("[U]nlike . . . *Shady Grove*, application of the [Minnesota] state statute here does not preclude application of the Federal Rule. . . . The discretion allowed a Federal Court under

---

[5] In concluding that Section 549.191 conflicts with Rule 15, the Court concludes only that the portions of Section 549.191 that require the plaintiff to show the applicable legal basis through affidavit and carry an evidentiary burden conflict. The Court expresses no opinion on the validity of Section 549.191's bar on seeking punitive damages at the outset of litigation, an issue not raised by Speed Partners' motion.

9

Rule 15(a) does not preclude or even conflict with the consideration of whether a party has also complied with Minnesota Statute § 549.191.").

The Court disagrees. *Shady Grove* made plain that if the Federal Rule "answers the question in dispute," it governs unless it is invalid. 559 U.S. at 398. As discussed above, Rule 15 does so and it therefore applies, assuming it is valid.

### C. The Federal Rules are Valid Under the Enabling Act

Under the Rules Enabling Act, the Supreme Court may "prescribe general rules of practice and procedure" for the federal courts, so long as they do not "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072. The Supreme Court has never held that a Federal Rule of Civil Procedure violates this dictate. *Shady Grove*, 559 U.S. at 407 (plurality opinion) ("[W]e have rejected every statutory challenge to a Federal Rule that has come before us.").

Unfortunately, *Shady Grove* does not supply clear direction on the next step in the Court's analysis because there was no controlling opinion on the issue of how to determine whether a Federal Rule is valid. In *Sela*, Judge Schiltz considered three possible approaches to determining the question: apply Justice Scalia's four-justice plurality, apply Justice Stevens's lone concurrence, or apply pre-*Shady Grove* authority. 353 F. Supp. 3d at 860. Judge Schiltz declined to decide which standard was correct because Rule 15 was valid under each of the three approaches. *Id.* The Court agrees that this is the proper course to follow.

*Justice Scalia.* Under Justice Scalia's approach, the critical inquiry is "the substantive or procedural nature of the Federal Rule," not that of the state law. *Shady Grove*, 559 U.S. at 410. If a Federal Rule is "rationally capable" of being classified as procedural, it is valid "even if [it] affect[s] a litigant's substantive rights under state law." *Id.* at 406; *Sela*, 353 F. Supp. 3d at 860. For Justice Scalia, the inquiry ends with determining that the Federal Rule "really regulat[es] procedure," or the way by which the litigant enforces his rights. *Shady Grove*, 559 U.S. at 407.

There can be no real dispute that Rule 15 "really regulates" procedure; specifically, the process for amending the complaint. It does not alter the "rules of decision by which [the] court will adjudicate" Speed Partners' state law claims. *Id.* Under Justice Scalia's approach, Rule 15 is valid.

*Justice Stevens.* Noting that "[t]he line between procedural and substantive law is hazy," Justice Stevens explained that whether a Federal Rule should displace a state law "turns on whether the state law actually is part of a State's framework of substantive rights and remedies." *Id.* at 419 (Stevens, J., concurring in part and concurring in the judgment). In Justice Stevens's view, a state law may be "so bound up with the state-created right or remedy that it defines the scope of that substantive right or remedy." *Id.* at 420. For example, a "seemingly procedural" rule that makes it significantly more difficult to bring or to prove a claim would serve to limit the scope of that claim. *Id.* In such case, applying the conflicting Federal Rule would necessarily "abridge, enlarge, or

11

modify" the substantive right and violate the Rules Enabling Act. *Id.* at 418, 420; *Sela*, 353 F. Supp. 3d at 861. But Justice Stevens also recognized that a state procedural rule trumps Federal Rules only rarely—the bar to do so "is a high one." *Shady Grove*, 559 U.S. at 432 (Opinion of Stevens, J.).

Justice Stevens noted that the New York law at issue expressly applied to claims based on New York law, federal law and the law of other states—such a broad application made it "hard to see how [the law] could be understood as a rule that, though procedural in form, serves the function of defining New York's rights or remedies." *Id.* So it is here. Section 549.191 applies to all bodies of law, regardless of their origin. *See* Minn. Stat. § 549.191 (not differentiating between Minnesota law claims and non-Minnesota law claims). Furthering this conclusion is the fact that the Minnesota Legislature bifurcated the procedure for seeking punitive damages and the substantive rule that governs their award. Section 549.191 provides the procedure for seeking such damages and Section 549.20 gives the substantive standard. *Dolphin Kickboxing*, 335 F.R.D. at 400 (collecting cases). This also demonstrates how Section 549.191 "serves the 'classically procedural' function (to quote Justice Stevens) of regulating how easy it is to bring a claim." *Sela*, 353 F. Supp. 3d at 862 (quoting *Shady Grove*, 559 U.S. at 435 (Opinion of Stevens, J.)).

Accordingly, the Court concludes that, under Justice Stevens's approach, Rule 15 is valid.

*Pre-*Shady Grove*.* The pre-*Shady Grove* approach tracks very closely with Justice Scalia's approach: "Under *Sibbach*, any federal rule that 'really regulates procedure' is valid under the Rules Enabling Act." *Sela*, 353 F. Supp. 3d at 863 (quoting *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1337 (D.C. Cir. 2015)); *see Sibbach v. Wilson & Co.*, 312 U.S. 1 (1941). Rule 15 is valid under *Sibbach* for the same reason it is valid under Justice Scalia's approach: it really regulates procedure.

In sum, the Court concludes that: (1) Minnesota Statutes Section 549.191 conflicts with Federal Rule of Civil Procedure 15; (2) applying Rule 15 to Speed Partners' motion to amend does not violate the Rules Enabling Act; and therefore (3) Rule 15, not Section 549.191, provides the procedural lens through which the Court views the motion.

### III.    Legal Standard

Rule 15(a)(2) provides that the "court should freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision to grant leave rests within the Court's discretion. *See Kozlov v. Assd Wholesale Grocers, Inc.*, 818 F.3d 380, 394 (8th Cir. 2016) (applying abuse of discretion standard of review to appeal of denial of a motion to amend). There is no "absolute right to amend," but the Court should permit amendments liberally "to ensure that a case is decided on its merits." *Ferguson v. Cape Girardeau Cnty.*, 88 F.3d 647, 650–51 (8th Cir. 1996). The Court may deny a motion to amend on grounds of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue

prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]" *Foman v. Davis*, 371 U.S. 178, 182 (1962). Futility appears to be the only ground at issue here. For the Court to deny leave to amend on grounds of futility, it must conclude that "the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure."[6] *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010).

To survive the motion to dismiss under Rule 12(b)(6), the Complaint "must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Horras v. Am. Cap. Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At this stage in the litigation, the Court must accept as true all factual allegations in the Complaint and draw all reasonable inferences in the plaintiff's favor. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009).

---

[6] Although Defendants assert that Judge Brisbois did not use the word "futile" (true), this is not determinative. Judge Brisbois concluded, as a matter of law, that Speed Partners' claims for punitive damages could not survive. (Amendment Order at 3–9.) Effectively, Judge Brisbois found that, even with the amendment, Speed Partners could not prevail on such a claim—the very essence of futility of amendment.

And within this familiar procedural context, Section 549.20 provides the substantive standard against which the Court must measure Speed Partners' allegations. *Shank v. Carleton Coll.*, No. 16-CV-1154 (PJS/HB), 2018 WL 4961472, at *4 (D. Minn. Oct. 15, 2018), *report and recommendation adopted*, 329 F.R.D. 610 (2019). The Court may permit punitive damages "only upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights . . . of others." Minn. Stat. § 549.20, subdiv. 1(a). A defendant acts with "deliberate disregard" if "the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others" and intentionally acts "in conscious or intentional disregard" of that probability or acts with deliberate indifference to the same. *Id.*, subdiv. 1(b).

Thus, coupling these two standards, the Court must determine whether the Complaint "plausibly alleges facts showing that the acts of Defendants show deliberate disregard for the rights or safety of others."[7] *Dolphin Kickboxing*, 335 F.R.D. at 401.

---

[7] Contrary to Defendants' assertions, Speed Partners did not need to "present clear and convincing, *prima facie* evidence that [Defendants] engaged in some intentional tort . . . ." (ECF No. 318 at 7.) Section 549.191 contains the "prima facie evidence" requirement, not Section 549.20. The Court has determined that Rule 15 is the applicable standard to Speed Partners' motion and that therefore, Speed Partners' allegations need only be sufficient to withstand a motion to dismiss under Rule 12(b)(6). That is, they need only plausibly allege facts that meet the standard of Section 549.20.

### IV. Punitive Damages

A straightforward application of Rule 15 to the PTAC, coupled with the Court's conclusions from the MTD Order, is sufficient to determine that Speed Partners may amend the Complaint to seek punitive damages.

#### A. TSV and Textron

Defendants first argue that Speed Partners cannot maintain a claim for punitive damages against either Textron Inc. or TSV because "the alleged fraudulent conduct occurred almost exclusively before" Textron acquired Arctic Cat. (ECF No. 254 at 12.) Defendants have therefore admitted that *some* of the alleged fraudulent conduct occurred after Textron acquired Arctic Cat. This includes multiple alleged misrepresentations by John Collins. (*E.g.*, PTAC ¶¶ 77, 84, 87.) These allegations are sufficient to have established tort claims. (*See generally* MTD Order at 17–21 (analyzing Speed Partners' fraud claims).) The claims also allegedly affected renegotiation of the parties' contract. (PTAC ¶¶ 83–85.) Fraud in the inducement is a sufficient separate tort to support a punitive damages award under Minnesota law, *Hanks*, 493 N.W.2d at 308, and Speed Partners has therefore stated a claim against Textron.[8]

---

[8] To the extent that Defendants argue that Speed Partners has alleged no facts supporting Textron Inc.'s liability, Speed Partners has announced its intent to pierce the corporate veil and the Court has deemed those allegations sufficient. (MTD Order at 10–13.) At this stage, the Court accepts as true the allegation that Textron Inc. and TSV are alter egos. Speed partners may maintain a claim for punitive damages against Textron Inc.

### B. Tort Claims

The Court has previously determined that Speed Partners alleged valid tort claims. (MTD Order at 17–21.) In that Order, the Court noted that Defendants had conceded that they could not seek to dismiss only part of a claim. (MTD Order at 14–15 n.9.) And the PTAC does not request punitive damages with respect to any particular claim, only an award of punitive damages generally. (PTAC at 31.) Therefore, the Court need only consider whether any of Speed Partners' tort claims may support punitive damages. The Court concludes that the allegations do.

As noted above, Speed Partners must plausibly allege that Defendants acted with "deliberate disregard" for Speed Partners' rights.[9] Minn. Stat. § 549.20, subdiv. 1(a). Speed Partners has plausibly alleged that Defendants' actions meet this standard. For example, Speed Partners alleged that Defendants were assuring Speed Partners that they would develop the vehicles as promised while secretly planning to shut down Speed Partners' projects. (PTAC ¶ 64.) Speed Partners has alleged that Defendants lied about their financial condition. (*Id.* ¶ 77.) Finally, Speed Partners has alleged that, if it was aware of

---

[9] The question of whether a plaintiff has produced sufficient evidence to go to a jury on punitive damages is best considered in the context of summary judgment, not a motion to dismiss (as is effectively the case here), because the Court has "the benefit of a fully developed factual record and more fulsome briefing on the legal issue." *Tholen v. Assist Am., Inc.*, No. 17-CV-3919 (DWF/SER), 2018 WL 3848434 (D. Minn. Aug. 13, 2018). Accordingly, the Court leaves consideration of the merits of Speed Partners' claims for another day.

these issues, it would have exercised its contractual rights to take its designs elsewhere. (*Id.* ¶ 85; *see id.* at 37 ("Arctic Cat shall have the right of first refusal . . . . If . . . Arctic Cat elects not to manufacture said vehicle . . . Speed RMG is free to manufacture, market and sell said vehicle on its own.").) These factual allegations state a plausible claim that Defendants acted to deprive Speed Partners of the right to take its designs elsewhere by saying they intended to manufacture the designs while not actually doing so, and thus preventing Speed Partners from going to another manufacturer. This is sufficient to allege deliberate disregard for Speed Partners' rights and therefore support a claim for punitive damages.[10]

The Court need not consider the exact contours or extent of Speed Partners' ability to seek punitive damages in this case. It is enough for now to say that it may seek punitive damages in this action. Rule 15 directs the Court to grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Based on the PTAC's allegations, justice so requires here.

---

[10] The Court notes that many of Defendants' arguments opposing Speed Partners' motion to amend attempt to question the credibility or factual basis for Speed Partners' allegations or introduce new evidence outside the PTAC to contradict those allegations. (*E.g.*, ECF No. 254 at 27 ("Product testing failures and Speed Partners' engineering shortcomings were the primary reasons for the cancellation . . . . This is reinforced by deposition testimony from several witnesses."); ECF No. 318 at 10 ("Subsequent discovery . . . ha[s] revealed that Speed's fraud and inducement claims fail to demonstrate that Arctic Cat/TSV acted with the requisite deliberate disregard . . . .").) The Court does not consider such material because it is incompatible with the Rule 12(b)(6) standard of assuming the truth of Speed Partners' factual allegations. *Braden*, 588 F.3d at 591.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. The Amendment Order (ECF No. 286) is REVERSED IN PART as set forth above;

2. Speed Partners' motion to amend (ECF No. 233) is GRANTED; and

3. Speed Partners may file an amended complaint seeking punitive damages no later than seven (7) days after issuance of this order.


Dated: August 6, 2021                          BY THE COURT:

                                                                           s/Nancy E. Brasel
                                                                           Nancy E. Brasel
                                                                           United States District Judge